# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 142

### OCTOBER TERM, A.D. 2014

*November 6, 2014*

ALICE A. PLATT,

**Appellant**
**(Defendant),**

**v.**

RALPH E. PLATT, individually, and
RALPH E. PLATT AND RONALD R.
PLATT, Co-Trustees of the Ralph E.
Platt Ranch Revocable Trust, dated the
11th day of May, 2006.

**Appellees**
**(Plaintiffs).**

S-13-0239, S-14-0053

*Appeals from the District Court of Carbon County*
*The Honorable Steven R. Cranfill, Judge*

*Representing Appellant:*
> Brandon L. Jensen, Joshua A. Tolin, and Karen Budd-Falen of Budd-Falen Law Offices, LLC, Cheyenne, Wyoming. Argument by Mr. Jensen.

*Representing Appellees:*
> William L. Hiser of Brown & Hiser, LLC, Laramie, Wyoming

*Before BURKE, C.J., and HILL, KITE\*, DAVIS, and FOX, JJ.*

*DAVIS, J., delivers the opinion of the Court; KITE, J., files a dissenting opinion, in which HILL, J., joins*

*\* Chief Justice at time of oral argument*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**DAVIS**, Justice.

[¶1]    This is an action for partition of a ranch.  Appellant Alice A. Platt challenges a district court order which requires the construction of a new ditch to carry the water she received to her parcel of land.  We find that the orders entered by the district court are not sufficiently complete to establish that a partition in kind can be made without manifest injury to the value of the property, and that the district court's order is clearly erroneous because it is not supported by competent evidence that an essential easement and permission for a change in means of conveyance can be obtained.  We therefore reverse and remand for further proceedings consistent with this opinion.

## ISSUES

[¶2]    We restate the issues presented as follows:

        1.      Is Appellant barred by res judicata, based upon the first order entered by the district court, from challenging the location and provisions related to location of the ditch selected by the district court?

        2.      Are the two orders, read together, sufficiently complete to resolve the issues necessary to partition the property as has been done?

        3.      Can a partition action require a party to acquire an easement over lands owned by a third party not involved in the action, and if so, was the district court's requirement that they do so clearly erroneous because it was not supported by adequate evidence?

        4.      Can a court order a party to a partition action to obtain a change in means of conveyance of water from the Board of Control?

        5.      Was the district court's selection of what is known as the Westerly Ditch to carry Appellant's water clearly erroneous?

        6.      Did the district court err in denying Appellant's request for a stay?

## FACTS

[¶3]    This partition action returns to the Court for resolution of issues relating to the location of a ditch easement.  As will be discussed below, the property involved is a

1

family-owned ranch that was inherited by two brothers, Wayne and Ralph Platt.[1] They have since conveyed their interests to the parties in this appeal.

**Proceedings Before the First Appeal**

[¶4]    As we indicated in our previous decision, disagreements as to the operation of the family ranch located near Encampment, Wyoming led to this action. *Platt v. Platt*, 2011 WY 155, ¶ 3, 264 P.3d 804, 805 (Wyo. 2011) (*Platt I*).  The district court found that the parties were entitled to partition, appointed commissioners as required by statute, and gave them comprehensive instructions as to their duties. *Id.*, ¶¶ 3-4, 264 P.3d at 805. *See* Wyo. Stat. Ann. § 1-32-104 (LexisNexis 2011).[2]

[¶5]    The commissioners submitted their report in due course.  They proposed a division of the land which will be generally described below, and they recommended that water rights be allocated to the parcel of land to which they were appurtenant.[3]  As will be seen, this required that the water appurtenant to the northern parcel awarded to Alice Platt be separated from that appurtenant to the southern parcel awarded to the Trust.[4]  The commissioners recommended the establishment of a "Dedicated Ditch" to carry Alice's water to her property.  This would require an additional headgate and measuring device to separate the parties' water after it was diverted from the King Turnbull Ditch No. 2, which is not on the partitioned property.

[¶6]    The commissioners recommended leaving it up to the parties to locate the Dedicated Ditch, and they gave only a general description of the area in which they believed it should be located.

> The Commissioners recommend the installation of a measuring device in the King Turnbull Ditch at the approximate location where the King Turnbull Ditch crosses the east line of the NE¼NW¼ of Section 33, Township 14 North, Range 82 West, for the purposes of measuring all of the water in the King Turnbull Ditch. The Commissioners make a further recommendation that a second measuring device be installed at the point of beginning of what will be a new dedicated "Delivery System" for the purposes of delivering water to the lands awarded to the Defendants.

---

[1] The record indicates that there was a prior partition action involving other portions of the ranch, but tells us nothing about it.

[2] This statute was amended in 2013, but the amendment has no effect on this appeal.

[3] They also recommended that all available water in excess of adjudicated water rights in wet years be split equally.

[4] The parties might have agreed to use the same means of conveyance, but have not done so.  The acrimony between them evidently makes separation of the appropriation of each necessary.

The Dedicated Ditch would establish a headgate and measuring device located at approximately the SE corner of the SW¼ of Section 28, Township 14 North, Range 82 West. It would then run in a northwesterly direction approximately three-quarters of a mile across lands awarded to Plaintiffs at such location as the parties may jointly agree to the approximately NW corner of the SE¼NW¼ of Section 28, Township 14 North, Range 82 West, for the benefit of those lands awarded to Defendants. The location of the Dedicated Ditch to be specifically described and to be a permanent easement across those lands on which it is located.

However, in the event the parties are unable to agree on the exact location of the Dedicated Ditch, to serve those lands awarded to Defendants by September 1, 2010, then Commissioners would ask the Court for authority to employ an engineer and to return to the lands with the engineer for the purposes of determining the exact location for such Dedicated Ditch. **In making this recommendation, the Commissioners would point out to the Court that because the lands involved are currently covered with snow, it is impossible for them to make a recommendation for the exact location of such ditch at the present time.**

(Emphasis added). The commissioners also recommended using the existing ditch system in 2010, contemplating that the Dedicated Ditch would be built in time for use in the Spring of 2011.

[¶7]  The district court incorporated these recommendations in its July 1, 2010 order partitioning the property, which basically left the parties to work out a location for the Dedicated Ditch because the commissioners were not able to locate it due to snow cover. The ruling required them to use an existing ditch network to irrigate both parcels until the Dedicated Ditch could be built.

[¶8]  The Trust (during this introduction, we will refer to Appellees collectively as the Trust and to Appellant here as Alice because their positions changed between the two appeals) appealed one aspect of the district court's decision, contending that its decision to set aside over 13.15 acres of their property to the ditch and grant an easement to Alice was improper. It argued that the district court lacked authority to modify a partition by court-appointed commissioners. *Platt I*, ¶ 15, 264 P.3d at 807. While, as discussed

3

below, the order was not truly final, we considered the merits of the narrow issue presented and affirmed.[5]  *Id.*, ¶ 22, 264 P.3d at 811.

**The Second Proceeding to Locate the Dedicated Ditch**

[¶9]   As might have been anticipated, the parties were unable to agree on a location for the Dedicated Ditch.  The Trust therefore moved to compel Alice to comply with the judgment and agree on the location of the ditch, or for reengagement of the commissioners to locate it.  The court reappointed the same three commissioners, who then set out to locate the Dedicated Ditch to convey Alice's water.

[¶10]  It is necessary at this point to touch on the history of the land involved here to understand the difficult issues the district court had to resolve.  Isaac Platt homesteaded a portion of the partitioned property in 1886.  Other portions of the property were originally owned by other homesteaders.  These homesteaders filed for water rights and built ditches on their properties.

[¶11]  Over time, Ralph H. Platt bought up these properties, which now make up the partitioned ranch.  As most Wyoming citizens already know, the business of ranching requires good pastures and leases on which cattle can graze, but it is also important to have hay meadows.  A rancher can harvest the hay and feed it to his cattle when grass is in short supply and in the winter, and in a good year may even have enough hay to sell some of it.

[¶12]  This property includes three "fields" or hay meadows: the Home Field, the Pool Field, and the King Field.  Before 1949, these were flood-irrigated by a number of different ditches.  In 1949, Ralph E. Platt completed what is called the "Pool Enlargement," which allowed him to "bunch" or pool water drawn from the King Turnbull No. 2 ditch on the neighboring Kraft ranch.[6]  The water was then sent down a ridge in a ditch the parties call either the Historic Ditch or the North-South Ditch (we will call it the latter).  The ranch was able to divert water into ditches branching off the North-South ditch, flood irrigate the King Field (now awarded to the Trust), and then recapture any water left over and flood-irrigate the Home Field where it could be reused on the parcel awarded to Alice.

[¶13] As already noted, this method could not continue after the property was partitioned, because the parties now own separate water rights, and some way had to be

---

[5] The Court could have converted the appeal to a petition for review and ruled as it did.  *See Schwab v. JTL Group*, 2013 WY 138, ¶ 14, 312 P.3d 790, 794-95 (Wyo. 2013).  Perhaps *Platt I* can best be viewed as the functional equivalent of conversion.

[6] There seems to be no doubt that there is an easement for a ditch conveying water from the King Turnbull No. 2 ditch on the Kraft ranch to the southern boundary of the partitioned property.  Whether it was granted as part of a prior partition, a grant, or is prescriptive is not clear.

4

found to meter and keep Alice's water separate from that of the Trust. Alice received a superior territorial water right.

[¶14] The commissioners plotted a location for what the record refers to as the Commissioners' Ditch. As in their original recommendation, water allocated to the parties would be removed from the King Turnbull No. 2 Ditch at the existing headgate on the Kraft Ranch. Alice's share would then be separated by another headgate and brought down a new ditch which had to be constructed in the general location of the North-South Ditch. The district court found the negative aspects of this choice to be as follows:

- The ditch would be approximately 7,475 feet long and would require ditch mitigation measures down virtually its entire length as it traverses the center of the land partitioned to the Trust.

- It would require approximately nineteen crossings for machinery, equipment, and cattle, eight crossover pipes and eight related headwalls to carry water without commingling it, as well as eighteen wood boxes for drops to prevent water from eroding the ditch when it rapidly loses elevation.

- A number of trees would have to be removed.

- It would take up about seven acres of the Trust's primary irrigated hay meadow.

- The ditch would be visible from Ron Platt's home. Mr. Platt operates the ranch for the Trust.

- The parties would have to work with machinery in close proximity to maintain their respective ditch networks. They have not been able to get along.

In addition, the Commissioners' Ditch would require an easement across lands owned by the Kraft Ranches due to the topography of the area.

[¶15] Alice proposed that the court simply locate the ditch in the same area as the North-South Ditch. The court found as follows concerning that option:

- This would be the longest ditch of the three proposed, and it would require ditch mitigation measures for its entire length. The ditch is so wide and deep that more than a thirty-foot easement would be required to place another ditch in that area, and the trust would lose more than seven acres of its primary hay meadow.

- It would require more crossings, crossover pipes, headwalls, and wood box drops than the Commissioners' Ditch.

5

- It would be visible from Ron Platt's home.

- Its location would make it difficult if not impossible for the Trust to use water it receives from another source, Little Beaver Creek.

[¶16] We note that this location would also require the parties to work with machinery in close proximity to each other in order to maintain or repair their respective ditches. All water to both ditches might have to be shut off if the Dedicated Ditch "blew out." On a positive note, this alternative would not require an easement to be obtained from a neighboring property owner, nor, evidently, permission to change the means of conveyance from the Board of Control. Alice also points out that the North-South Ditch is a known commodity, because it has been used since approximately 1949.

[¶17] At the hearing, the Trust proposed a third option to the west of the other ditches, which is therefore referred to as the Westerly Ditch. The proposed route was simply drawn on a map by Ron Platt, and it has not therefore been surveyed. The district court found as follows concerning the Westerly Ditch:

- It is the shortest ditch of the three at 5,870 feet.

- Because it is located to the west of the Trust's irrigated lands, it will require ditch mitigation measures on only one side.

- It will require at most three crossings for machinery and two crossover pipes, although it will require eight drop pipes in three locations, three concrete diffusers (to mitigate the effects of falling water), and three headwalls at the drop pipe locations.

- No trees will need to be removed.

- The route is in the general area described in the order of partition described above.

- It will not be visible from Ron Platt's home.

- The ditch can be checked from a county road adjacent to the Trust's parcel.

- It will result in the loss of only 3.3 acres of the Trust's irrigated pasture, as opposed to approximately seven acres of irrigated hay meadow.

[¶18] On the negative side, no ditch exists in this area, although there is a remnant of a ditch that has not been used since the 1950s. The general area is therefore untested and

6

may contain porous soils, meaning that water may have to be carried in a pipe or a lined ditch for at least a portion of its length to reduce conveyance losses. It is a steep route, and hence the drop structures are required to avoid having the force of falling water destroy the ditch.[7]

[¶19] On the other hand, all of the commissioners, who are ranchers who irrigate themselves, conceded that the Westerly Ditch could work, although measures to deal with the elevation loss and other factors will be needed, and there will be costs associated with these measures. As with the Commissioners' Ditch, an easement would have to be obtained from the Kraft Ranch to the south of the Trust property, and the Board of Control would have to approve a change in the means of conveyance of the water. As of the date of argument, neither of those things had occurred.

[¶20] A hearing related to all of the above took place on June 19 and 20, 2013. The parties submitted proposed findings of fact and conclusions of law. In a decision letter filed August 26, 2013, the district court chose the Westerly Ditch, although it noted that this was arguably the most expensive option. It commented as follows:

> The Court is in a difficult position. While the decision should be fair and equitable, as well as cost effective[,] the Court has to take into consideration the Parties' inability to cooperate in this matter. Therefore, the Court will adopt Mr. Platt's proposal because it has the best future outcome for both parties, being that there would be minimal to no interaction between them for maintenance and inspection. The Court recognizes the expense that both parties will have to incur to achieve this result, however all the proposals required some amount of construction and cost.

[¶21] The district court entered the findings of fact and conclusions of law proposed by the Trust on August 26, 2013. It ordered the parties to share the cost of installing a headgate to split their water, as well as the cost of building and constructing a workable irrigation system and addressing any problems encountered with the Dedicated (Westerly) Ditch for a period of three years from Alice's first use of the ditch. The orders are contradictory as to which party must pay the costs of correcting any problems and maintenance after that time period.[8] The parties were required to pay their portion of the

---

[7] Appellees point out that the total drop is all the same, because the water must be moved from the King Turnbull Ditch to the Pool Field. However, elevation is obviously not lost at the same rate on all alternatives.

[8] The July 1, 2010 Final Judgment and Order Partitioning Real Property indicates that "[f]uture maintenance costs incurred in the maintenance of the headgate and second measuring device located at the approximate SE corner of the SW¼ of Section 28, Township 14 North, Range 82 West, shall be the responsibility of the Defendants and the cost of maintaining the Dedicated Ditch once constructed shall

costs within thirty days of receiving a statement for them, and if a party did not pay, the other person or entity could recover attorney fees and interest at ten percent. It also required that the work be completed "prior to the 2014 irrigation season," but did not define that term.

[¶22] Importantly, the Westerly Ditch can only become a reality if an easement can be obtained to convey water across Kraft Ranches, Inc's land. Appellee informs us that one of the appraisers, Jerry Kraft, is a shareholder in and president of Kraft Ranches, Inc., although this is not reflected in the record. The commissioners' report, which was signed by Mr. Kraft, indicated as follows:

> Kraft Ranches, Inc., owner of the property where the measuring devices and headgate are to be located, will allow easement for Dedicated Ditch, access to and from the location, dirt materials necessary for installation and maintenance of same at no cost. Costs associated with any paper work or surveying work deemed necessary to accomplish this shall be shared by the parties of the partition. Owners of Kraft Ranches, Inc. need to be notified of any upcoming work and reserve the right to advise and oversee any construction or maintenance on their property.

[¶23] The district court evidently believed this language sufficient to assure that a workable easement could be obtained, although it does not demonstrate that the Kraft Ranches corporation had approved the gift, the location or the size of the proposed easement, or exactly what rights it retained to "advise and oversee." The court ordered Alice to work with Kraft Ranches to obtain and locate an easement across its land, and directed the parties to share the cost of establishing and building the ditch on that property. The order was then appealed.

**Petition for Stay**

[¶24] Appellant petitioned for a stay on November 18, 2013. She claimed that the order entered on August 26, 2013 would effectively prohibit her from appealing from it because she would have to expend the funds needed to pursue an appeal to build the

---

also be the responsibility of the Defendants." Under that order, Alice would be responsible for maintenance after three years. However, the August 26, 2013 order indicates that "[b]ecause the problems created on the Plaintiffs' land with the creation of the Dedicated Ditch are hard to predict until the Dedicated Ditch is put in service, such ditch remediation measures shall be undertaken and completed within three years of the Defendant's first use of the Dedicated Ditch and thereafter, the Plaintiffs shall be responsible for all costs associated with the ditch remediation measures." This provision would require the Trust to maintain the ditch after three years, even though it gains no benefit from it. We anticipate that this ambiguity will be cleared up on remand.

ditch. She filed an affidavit attesting that she obtained estimates to survey and engineer the ditch, as well as the cost of pipeline materials and bids for construction. The attached estimates ran from $115,000 to $180,000.[9] Affidavits from the two contractors who provided bids were also attached. She also filed a copy of a proposal by the United States Department of Agriculture Natural Resources Conservation Service (NRCS), to whom Alice and Ron Platt had evidently applied for a grant and assistance in designing a means to convey Alice's water. NRCS estimated the cost of installing a twelve- or fifteen-inch pipeline at $80,773 and $96,873, of which the parties would pay thirty-five percent. For reasons that are not clear in the record, the proposal did not come to fruition.[10] Appellant also pointed out that the location of the ditch might change after appeal, and that it would be fruitless to expend as much money as would be required in light of that possibility.

[¶25] The district court denied the application for a stay without hearing on January 24, 2014, finding only that it was "inappropriate." Appellant timely appealed that order. She did not build the ditch, and was no longer able to use the North-South Ditch to convey water to her land. She applied to this Court for a stay on February 12, 2014, and the Court denied the application on March 4, 2014. The appeals were consolidated.

## DISCUSSION

### Res Judicata as to Location of Ditch

[¶26] Before addressing the merits, we must resolve a threshold question raised by Appellee Trust. It claims that the first order, which described itself as "Final," resolved the location of the Dedicated Ditch, and that because that aspect of the order was not challenged in *Platt I*, it cannot be challenged on appeal now. For more than one reason, we disagree.

[¶27] Determination of whether the doctrine of res judicata (or claim preclusion) applies is a question of law, which we review *de novo*. *Goodman v. Voss*, 2011 WY 33, ¶ 23, 248 P.3d 1120, 1126 (Wyo. 2011) (citing *Erwin v. State Dep't of Family Servs.*, 2010 WY 117, ¶ 10, 237 P.3d 409, 412-13 (Wyo. 2010)). The elements of res judicata are: (1) identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them. *Rathbun v. State*, 2011 WY 116, ¶ 9, 257 P.3d 29, 33 (Wyo. 2011) (citing *Eklund v. PRI Envtl., Inc.*, 2001 WY 55, ¶ 15, 25 P.3d 511, 517 (Wyo. 2001)). In addition, in order for res judicata or collateral estoppel to apply, the proceeding in question must have terminated with a final or appealable order. *In re E.R.C.K.*, 2013 WY 160, ¶ 28, 314 P.3d 1170, 1176 (Wyo. 2013); *Aragon v.*

---

[9] The major difference between the two was in the contractors' estimates. One of the contractors recommended that the ditch not be used for one year in order to allow the soils to resettle and compact.

[10] We note that the bids Alice solicited were for twenty-four inch pipe, which may explain the cost differences.

*Aragon*, 2005 WY 5, ¶ 12, 104 P.3d 756, 760 (Wyo. 2005) (decree which did not determine custody did not collaterally estop father seeking custody); *In re KRA*, 2004 WY 18, ¶ 10, 85 P.3d 432, 436 (Wyo. 2004). As a leading federal treatise explains:

> Judicial actions must achieve a basic minimum quality to become eligible for res judicata effects. First, there must be a judgment. The traditional words used to describe this quality require that there be a judgment that is valid, final, and on the merits. It seems safe to guess that most res judicata questions are raised by judgments that easily satisfy these requirements. Difficulties remain, however, with respect to each requirement.
>
> .   .   .
>
> The requirement that a prior judgment be "final" employs a word that immediately invokes the relationships between rules of appealability and res judicata. **Tentative or incomplete action, avowedly subject to further consideration, does not alone suffice for appeal or res judicata.**

18A Charles Alan Wright et al., *Federal Practice and Procedure* § 4427 (2d ed. updated 2014) (emphasis added) (footnotes omitted).

[¶28]  By this standard, it is apparent that the first "final" order did not bar consideration of the location of the easement for the Dedicated Ditch, for the following reasons:

- The commissioners made it clear in their report that they could not locate the ditch because the land was covered with snow. They testified at the second trial that they had no specific location in mind, and intended for the parties to agree on a location for the ditch.

- Easements which are not specifically described are null and void and of no force or effect unless they can somehow be located. Wyo. Stat. Ann. § 34-1-141(a), (c) (LexisNexis 2013); *Horse Creek Conservation Dist. v. State ex rel. Wyoming Attorney General*, 2009 WY 143, ¶ 36, 221 P.3d 306, 317-18 (Wyo. 2009) (use of the word "adjacent" was sufficient to describe lands available for public access).

- The description of the Dedicated Ditch in the commissioners' responses to special interrogatories is not sufficient to locate it on the ground – it was more of a suggestion than a description (emphasis added):

> The Dedicated Ditch would establish a headgate and measuring device located at **approximately** the SE corner of

the SW¼ of Section 28, Township 14 North, Range 82 West. It would then run in a northwesterly direction **approximately** three-quarters of a mile across lands awarded to Plaintiffs at such location as the parties may **jointly agree** to the approximately NW corner of the SE¼NW¼ of Section 28, Township 14 North, Range 82 West, for the benefit of those lands awarded to Defendants. The location of the Dedicated Ditch **to be specifically described** and to be a permanent easement across those lands on which it is located.

- The district court's order includes the same language, and it also provides that the commissioners will be reengaged and shall employ an engineer for "purposes of determining the exact location for such Dedicated Ditch."

- The district court and the commissioners did not consider the order to have resolved the issue. The commissioners proposed a ditch in an entirely different location. The district court engaged in a lengthy analysis of the relative merits and disadvantages of all three proposed ditches, which would have been unnecessary if the first order in fact adequately specified the location.

[¶29] It is readily apparent that neither the court nor the commissioners ever ruled on the location of the Dedicated Ditch, but instead deferred that decision hoping that the parties, who had not to that point agreed on much of anything, would find an amicable resolution of this important issue. The Trust argues that the location later traced on a map by Ron Platt is consistent with the very vague and general description in the second order, which is true, but not particularly helpful.

[¶30] The dissent correctly points out that the parties have not argued that the first order was not appealable. However, this Court has in the past found orders not to be appealable and dismissed even when the parties did not "directly raise" the issue supporting dismissal. *Bd. of Trustees of Memorial Hosp. of Sheridan Cnty. v. Martin*, 2003 WY 1, ¶¶ 9, 16, 60 P.3d 1273, 1275-77 (Wyo. 2003). The Trust "indirectly" brought the issue to our attention by its argument. It is not surprising that the parties do not always raise appealability because they do not have the same interest as appellate courts do in avoiding piecemeal appeals. 15A Wright, *supra*, at § 3905. Appellate courts in other states have held that they have a duty to examine whether an order is appealable *sua sponte*. *Kulp v. Hrivnak*, 765 A.2d 796, 798 (Pa. Super. Ct. 2000); *Jensen v. Howard*, 926 S.W.2d 77, 77 (Mo. Ct. App. 1996); *Baltimore Home Alliance, LLC v. Geesing*, 97 A.3d 220, 224 (Md. App. 2014); 15A Wright, *supra*, at § 3905.

[¶31] Appeals of non-appealable orders are generally dismissed. However, in this unusual case, a decision was reached in *Platt I*. For that reason, we will not dismiss, but we will decline to apply res judicata or claim preclusion to an incomplete order.

[¶32] The Trust also argues that the 2010 ruling is the law of the case. We disagree for the same reasons we find that res judicata/claim preclusion does not apply. The ruling did not decide the location of the Dedicated Ditch, but instead simply urged the parties to come to some agreement.

[¶33] Appellant is not barred from challenging the location of the Westerly Ditch.

**Finality of First and Second Order**

[¶34] Unfortunately for these parties, who have expended considerable money, time, and emotion in a struggle to divide the property which is their birthright, our determination that the original "Final Judgment" entered by the district court was not complete has more profound implications for this appeal. The issue presented in *Platt I* was narrow, and the completeness of the order was not raised by the parties, and so the aspect of the order we have been asked to review was not scrutinized in that case as it is now.

[¶35] The partitioned property is used for agriculture and ranching. Those activities require irrigation water beyond that which falls on the land in the form of rain and snow. Without water diverted from streams and other watercourses, this land is worth much less. As a member of this Court has observed:

> Water is the lifeblood of Wyoming. It is a scarce resource which must be effectively managed and efficiently used to meet the various demands of society.

*In Re General Adjudication of All Rights to Use Water in Big Horn River System*, 835 P.2d 273, 279 (Wyo. 1992) (plurality opinion).

[¶36] The property has excellent water rights, some of them dating back to when Wyoming was a territory pioneering the system of priority by appropriation, which has become the model for western states.[11] The commissioners recommended, and the court

---

[11] Thus United States Supreme Court has explained the same:

> Certainty of rights is particularly important with respect to water rights in the Western United States. The development of that area of the United States would not have been possible without adequate water supplies in an otherwise water-scarce part of the country. The doctrine of prior appropriation, the prevailing law in the western states, is itself largely a product of the compelling need for certainty in the holding and use of water rights.

*Arizona v. California*, 460 U.S. 605, 620, 103 S. Ct. 1382, 1392, 75 L. Ed. 2d 318 (1983) (citations omitted), decision supplemented, 466 U.S. 144, 104 S. Ct. 1900, 80 L. Ed. 2d 194 (1984)

ordered, that the water rights be awarded to the party who received the lands to which they were appurtenant, which is a logical solution that the parties do not challenge. Water rights can be partitioned along with the real property to which they pertain, provided that each parcel receives an equitable share of the right and has enough water to permit continued use of the land as it has historically been used. *Kravik v. Lewis*, 691 P.2d 1373, 1376 (Mont. 1984); 59A Am. Jur. 2d *Partition* § 12 (2014). Water rights are presumed to be appurtenant to the land on which the water is used when the land is conveyed. *Frank v. Hicks*, 4 Wyo. 502, 530-31, 35 P. 475, 484 (1894).

[¶37] However, water rights are useless if the water cannot be delivered to the land. To state the obvious, for water to be used, there must be ditch rights and easements for ditches sufficient to carry it to the land. Ditches require maintenance, and the easements for those ditches must therefore be sufficient to allow the use of heavy equipment. It may be necessary for the owner of the ditch to use dirt on the servient property to repair the ditch or rebury it if the water is carried through a pipe. *Laden v. Atkeson*, 116 P.2d 881, 883 (Mont. 1941) (holders of dam or ditch easements may use a reasonable amount of the soil on the servient estate to repair them) (quoting Thompson on Real Property and Jones on Easements)).[12]

[¶38] At English common law, partition in kind had to be accomplished even if it might be "inconvenient, injurious, or even ruinous to the parties in interest." A.C. Freeman, *Cotenancy and Partition: A Treatise on the Law of Ownership as it Exists Independent of Partnership Relations Between the Co-Owners* § 433, at 569 (2d. ed. 1886). American courts tempered that rule by refusing to partition in kind when to do so would practically destroy the property's value. *Id.* (citing *Brown v. Turner*, 1 Aik. 350, 15 Am. Dec. 696 (Vt. 1826)). The Wyoming Territorial Legislature adopted the latter rule when it enacted in 1886 what is now Wyo. Stat. Ann. § 1-32-109, as the statute provides for partition by allotment (where a coparcener essentially buys the other out) or by public sale, if "the estate cannot be divided according to the demand of the writ [of partition] without manifest injury to" the property. *See* Wyo. Stat. Ann. §§ 1-32-109 through -114 (Lexis Nexis 2013), and Revised Territorial Statutes of Wyoming §§ 2970 through 2974 (Daily Sun Steam Printing House of Cheyenne 1887). (The statutes have remained unchanged for over 120 years).

[¶39] "Section 1-32-109 applies when the real property cannot be divided in kind without causing manifest injury to its value." *Hutchins v. Payless Auto Sales, Inc.*, 2004 WY 22, ¶ 13, 85 P.3d 1010, 1013 (Wyo. 2004) (*Hutchins II*). The commissioners in this case answered special interrogatories in which they found that the property could in fact be partitioned "without manifest injury to the whole." The interrogatory answers were

---

[12] Of course, the language of an easement may eliminate or further limit the rights found to be implied by the grant in *Laden*. *R.C.R., Inc. v. Deline*, 2008 WY 96, ¶ 5, 190 P.3d 140, 146 (Wyo. 2008) (language of easement determines its scope and rights of the parties).

incorporated in the district court's initial order partitioning the property. The commissioners had been instructed to determine whether the property could be divided "without manifest injury to the property's value."

[¶40] A finding by commissioners which is accepted by the trial court is treated as if it were a finding made by the trial court, and it is reviewed under the same standard. *Taran v. Vermont Structural Slate Co., Inc.,* 431 A.2d 448, 450 (Vt. 1981); 59A Am. Jur. 2d *Partition* § 130 (2014). We review trial court findings of fact to determine whether they are clearly erroneous in light of the record. *Barlow Ranch, Ltd. Partnership v. Greencore Pipeline Co. LLC*, 2013 WY 34, ¶ 52, 301 P.3d 75, 91 (Wyo. 2013). We review questions of law decided by the trial court *de novo*. *Id*.

[¶41] Neither the district court nor the commissioners could have made a valid determination that the partition settled upon would not result in manifest injury to the property's value without locating the Dedicated Ditch necessary to carry water awarded to Appellant to her partitioned parcel. Without a means to convey water to irrigate meadows and pasture, the land awarded to her could not be used as it historically had been. *Kravik,* 691 P.2d at 1376. There can be little doubt that a property with good water rights and a means to convey the water to the land is worth considerably more in arid Wyoming than land without one or the other.

[¶42] Another problem is that two of the solutions eventually explored, the North-South and Commissioners' Ditches, will take approximately seven acres of the valuable hay meadows awarded to Appellees, which would undoubtedly impact the value of their parcel. There is no engineering data, and there are no feasibility studies, cost estimates, or evidence of conveyance losses which would have allowed the commissioners or the district court to assess the cost of the Dedicated Ditch, because its location was undetermined.

[¶43] The initial order of partition exhorted the parties to work out a ditch location and determined how costs would be shared, no doubt in the hope that reason would prevail and that the ditch could be built at reasonable cost. Hope, unfortunately, is not a definitive ruling.

[¶44] The dissent characterizes the costs involved as "a wash," and it is true that the parties would pay the same amount under the district court's order. The record does not tell us, however, how much is "washed." Hypothetically, all would agree that if it costs $1,000,000 to build the ditch, there would be manifest injury to the value of the property. The only cost information in the record was provided by Appellant after the district court entered its second order, and it could not therefore have been considered in that ruling.

[¶45] The fact that the ditch was not located makes any finding that partition in kind would not manifestly injure the value of the property clearly erroneous. Requiring the

14

parties to pay the cost of locating and building ditches may manifestly injure the value of the property. Amounts paid out to utilize the water reduce the value of the land to an affected coparcener.

[¶46] However, whatever the shortcomings in the original partition order, the second trial and order may have resolved them. Appellant contends that the district court's second ruling was legally and factually erroneous. These arguments provide a focus for determining whether that ruling was a correct and complete determination based upon the record.

**Ordering Parties to Obtain an Easement Not on Partitioned Land**

[¶47] Appellant contends that the district court erred in the second decision when it ordered the Dedicated Ditch to be built partly on land belonging to Kraft Ranches, which is not a party to the partition action. She points out that the partition statutes allow a writ for "estates of lands" held in joint tenancy, tenancy in common, or coparcenary, citing Wyo. Stat. Ann. § 1-32-101. The Trust does not confront this argument head-on, but argues instead that the parties are required to work the location of the easement out with Kraft Ranches, and that Jerry Kraft was one of the persons signing the ditch report in which the commissioners indicated that Kraft Ranches would allow an easement for the Dedicated Ditch with some restrictions. The parties are really addressing two different things – Appellant argues that the district court had no power to require the parties to acquire an additional easement across the lands of others, while Appellees argues that it may be possible to do so.

[¶48] We will first address the court's power to order the parties to obtain an easement. We have exhaustively searched for a case which confronted this issue, and we have found nothing. The parties have apparently had no success either, as they have not cited a case on point. Under the circumstances, we are left to our own devices to determine whether the district court could order something like it did. The viability of the court's decision to require construction of the Westerly Ditch is completely dependent on the parties' ability to obtain an easement from Kraft Ranches. Appellant is of course correct that the district court had no power to compel Kraft Ranches, a non-party, to grant her a ditch easement in this case.

[¶49] An approach lies in the concept of "owelty," although whether it can apply in this case rests on factual determinations which remain to be made. In *Platt I*, the Court held that district courts continue to have supplemental equitable common-law powers to partition property even though partition is also governed by statute. *Platt I*, ¶ 18, 264 P.3d 808-09. As we have previously explained, owelty is a common law doctrine which addresses a disparity in the value of the partitioned parcels, and is

15

[a] sum of money paid by one of two coparceners or cotenants to the other, when a partition has been effected between them, but, the land not being susceptible of division into exactly equal shares, such payment is required to make the portions respectively assigned to them of equal value.

*Hutchins II,* ¶ 17, 85 P.3d at 1014.

[¶50] The value of the parcel awarded to Appellant without a definite means of conveying water to it is unknown. The cost of building a ditch affects the value of Appellant's parcel to an unknown extent. If the record supported the conclusion that it is possible to obtain an easement and build a ditch connecting the nonexistent Westerly Ditch to the King Turnbull Ditch, the district court could have directed Appellees to pay the difference in value, i.e., the cost of establishing the ditch, if that is actually the difference. It could also divide that cost as it did in order to equalize values. While this solution may not fit the strict definition of owelty, it accomplishes the same thing – an equitable division.

[¶51] However, we disagree with Appellee Trust and the dissent when they contend that the record supports the district court's decision. The record does not in fact support, through any competent evidence, a conclusion that an adequate easement can be obtained, and it therefore does not establish that partition will not result in manifest injury to the value of the property, or at least to the portion awarded to Alice Platt, for the following reasons:

- The Trust indicates that there was "consent" to cross Kraft Ranches with the ditch. In reality, the only document in the record evidencing such a consent is the portion of the commissioners' second report quoted above. It indicates that Kraft Ranches "will" allow an easement – this is at best a vague promise of future performance.

- The commissioners' report recommended a different ditch than the district court settled on. Kraft Ranches' willingness to provide an easement for the Westerly Ditch was not addressed in the report or the testimony the district court heard.

- An easement is an interest in land, and to obligate the grantor to supply the easement, any agreement must satisfy the Statute of Frauds, which would require that there be a conveyance or agreement to convey signed by the party to be charged, i.e., Kraft Ranches. Wyo. Stat. Ann. § 1-23-105(a)(v) (LexisNexis 2013); Restatement (Third) of Prop.: Servitudes § 2.1 (2014). Jerry Kraft signed the commissioners' report as a commissioner, not as a representative of Kraft Ranches, Inc. Although the Trust indicates in its brief that Mr. Kraft is the President of Kraft Ranches, and that might be true, the record does not validate this claim.

16

- As noted above, Wyo. Stat. Ann. § 34-1-141(a) and (c) requires easements to be specifically described. The commissioners' report does not satisfy this requirement. The statement does not indicate whether the easement will be appurtenant (and run with the land) or in gross (and expire on conveyance of the land). It does not describe the width of the easement that would be granted.

- The report indicates that Kraft Ranches will reserve the right to "advise and oversee" any construction and maintenance. The document does not tell us what limitations this language is meant to impose, and whether it would be a burden on Appellant's ability to maintain that portion of the ditch. If the burden is too great, it may affect the value of the property awarded to her.

- The district court understood that there was no specific agreement requiring Kraft Ranches to grant an easement, because it indicated that the location of the ditch would be worked out and ordered Appellant to "work with the landowner to establish the location and appropriate documentation."

[¶52] Whether or not the district court's finding that the Westerly Ditch was clearly erroneous is an issue discussed below. However, it is obvious that neither the Commissioners' Ditch nor the Westerly Ditch can carry water to Appellant's parcel without crossing Kraft Ranches' property. Without determining that the easement could in fact be obtained, that it would allow appropriate construction and necessary maintenance of the ditch, and that it would run with the land, the district court had no basis to determine that the value of the partitioned property would not be manifestly injured or that the partition was equitable. Its decision in this regard was therefore clearly erroneous.

[¶53] However, this does not mean, as the dissent suggests, that an easement must actually be obtained before the district court can require the parties to build the Westerly Ditch. Rather, the cost and availability of an easement can be established by sworn testimony or documentary evidence. Mr. Kraft could have been asked about this issue when he testified earlier, but he was not.

[¶54] Appellees argue, and the dissent agrees, that if an easement cannot be obtained by agreement, one can be condemned under Wyo. Stat. Ann. § 1-26-815. In order to exercise the power of eminent domain, the parties would have to prove the elements of § 1-26-504(a):

> (i) The public interest and necessity require the project or the use of eminent domain is authorized by the Wyoming Constitution;

17

(ii) The project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury;  and

(iii) The property sought to be acquired is necessary for the project.

Wyo. Stat. Ann. § 1-26-504(a) (LexisNexis 2013).

[¶55]  Given the alternative means of conveying water, and the availability of partition other than in kind, the necessity of the condemnation would almost certainly be an issue with an uncertain outcome in a contested proceeding.  Beyond that, the parties would have to engage in more protracted litigation, divide costs, expenses, and attorney fees, and moreover pay fair compensation in an unknown amount if successful.  No evidence was presented as to the net effect this would have on the value of the property because of the funds which would have to be expended to use it.  It is certainly not an easy solution as the Trust and dissent suggest, and it is not one that was presented to or considered by the district court.

**Change in Means of Conveyance**

[¶56]  Appellant argues that the Westerly Ditch chosen by the district court requires her to change the means of conveyance for the water she received in the partition, and that she cannot be compelled to do so.  She points to Wyo. Stat. Ann. § 41-3-114(a)(i), which provides that "[a]ny person entitled to the beneficial use of water . . . who **desires** to change the point of diversion or means of conveyance, or both, shall file a petition with . . . the board of control . . . ."  (Emphasis added).  She also directs us to Wyo. Stat. Ann. § 41-3-114(f), which provides that no petition for a change in the point of diversion or the means of conveyance shall be granted if the right of any appropriators will be injuriously affected.

[¶57] The Trust correctly responds that the means of conveyance can be changed without changing the point of diversion, and argues that, despite the language of the statute, the means of conveyance can be changed without filing a petition with the Board of Control or state engineer's office.  But there is no competent evidence in the record to this effect.  In support of the argument, the Trust supplied the district court and this Court with the telephone number of an employee of the State Board of Control it claims has provided it this information.  Neither the district court nor this Court is permitted to make *ex parte*, off-the-record contacts with persons claimed to have knowledge of facts pertinent to cases before them.  The state employee referred to did not testify at trial.  We must therefore decide this issue based upon our reading of the statute.

[¶58]  Guided by our rules for statutory interpretation, *see Aland v. Mead*, 2014 WY 83, ¶ 11, 327 P.3d 752, 758-59 (Wyo. 2014), the clear and unambiguous language of the

statute convinces us that the Wyoming Legislature intended to require a person changing the means of conveyance of water supplied through a water right to obtain approval by the Board of Control.

[¶59] Appellees argue that the district court had the power to order Appellant to change her means of conveyance. We think both parties miss the point. The district court did not in fact order Appellant to change her means of conveyance. We conclude that Appellant may choose to change her means of conveyance or not; however, if the district court makes appropriate findings and orders her to use the Westerly Ditch, she will be compelled to change her means of conveyance if she wants to bring water to her land. That may be a Hobson's choice, but it may also be unavoidable.

[¶60] However, there was no evidence presented as to whether Appellant can in fact obtain approval to change the means of conveyance of her water. The record does not tell us whether the rights of junior appropriators would be affected in any way. If the evidence shows that Appellant cannot obtain permission to change the means of conveyance to carry water to her land, the value of the partitioned parcel she received would be affected. We will remand to the district court to determine, among other things, whether Appellant can obtain approval for a change in the means of conveyance. We recognize that this determination may be difficult to make, and if it cannot be made, the district court may have to select another route or otherwise adjust the partition.

[¶61] The dissent suggests that it would be unnecessary to require Appellant to first obtain a change in the means of conveyance before ordering the Westerly Ditch built. We agree. However, whether a change in the means of conveyance will be granted can be proven by a preponderance of competent evidence like any other fact. The individual the Trust suggested the district court and this Court call on the phone can testify in person or by telephone if that is more convenient. *See* Uniform Rule of District Court 802 (allowing testimony by conference call).

**Abuse of Discretion in Choice of Westerly Ditch**

[¶62] Appellant contends that the district court abused its discretion in choosing the Westerly Ditch. She contends that the North-South Ditch provided an existing and proven means of conveying water to her partitioned land, and that the Commissioners' Ditch would also have been a better choice than the Westerly Ditch. She points out that none of the Westerly Ditch exists, and that it is unproven.

[¶63] The Trust directs us to testimony indicating that the appointed commissioners and Ron Platt, all of whom were experienced irrigators, testified that the Westerly Ditch could be successfully built and operated, although it may be necessary to encase all or parts of it in pipe and/or to employ other measures to prevent water loss from porous soils. An engineer retained by Appellant agreed.

19

[¶64]  We conclude that there was sufficient evidence for the district court to conclude that the Westerly Ditch could be successfully built and operated if the parties expend enough money, time, and effort.  However, the court was presented with no evidence as to the cost of constructing it until after it selected the Westerly route.  The district court therefore had nothing to establish that a partition which required the location and construction of the Westerly Ditch would not manifestly injure the value of the property because of the cost of surveying, engineering, and building it.  Because we remand to determine whether an easement and a change in means of conveyance can be obtained, we also remand for a determination as to whether the cost of building the Westerly Ditch would manifestly injure the value of the property.

**Other Issues Relating to the Order**

[¶65]  The order presents other issues that should be addressed:

- The order requires the parties to pay any statement for surveying, engineering, building, and maintaining the Dedicated Ditch within thirty days, and it also provides for interest at ten percent and attorney fees if the bill is not paid.  We are aware of no authority that would allow a court to in essence make a contract for the parties.  We have generally held to the contrary in cases involving contract interpretation.  *See, e.g., Michael's Const., Inc. v. American Nat'l Bank*, 2012 WY 76, ¶ 34, 278 P.3d 701, 710 (Wyo. 2012).

  Prejudgment interest is limited to seven percent per annum unless the parties otherwise agree, although a judgment accrues interest at ten percent unless otherwise agreed by contract.  Wyo. Stat. Ann. § 40-14-106(e), § 1-16-102(a) and (b) (LexisNexis 2013).  The district court had no power to set a rate not authorized by statute for a prejudgment debt.

  Attorney fees can only be awarded if permitted or required by contract or statute.  *Fix v. South Wilderness Ranch Homeowners Ass'n*, 2012 WY 96 ¶ 17, 280 P.3d 527, 532 (Wyo. 2012).  There is no applicable statute or contract in this case.  If a party willfully fails to obey a court order he or she is able to perform, perhaps a compensatory contempt award could be made, but that would require a hearing to establish facts specific to the alleged contempt.  *Walker v. Walker*, 2013 WY 132, ¶ 39, 311 P.3d 170, 178 (Wyo. 2013).

- The order does not address the complex mechanics of entering into contracts to build the Westerly Ditch.  It is doubtful that contractors will put tens of thousands of dollars of material and labor into a project without an assurance of payment in the form of a deposit, security or an agreement that protects their right to payment.  Liens in the event contractors are not paid are another issue.  It is unlikely that

20

Kraft Ranches would want a lien on its property. It is thus unclear what obligation each party would have to enter into necessary contracts, and the consequences if they do not. *See, e.g., Redco Const. v. Profile Properties, LLC*, 2012 WY 24, 271 P.3d 408 (Wyo. 2012) (no lien on property of lessor for improvements contracted for by lessee unless there is an agreement or lessee is lessor's agent).

- The order is not specific as to the specifications to which the ditch must be constructed. The options range from a ditch which may be partially or mostly earthen with some piping and drop structures to a ditch completely enclosed in pipe. The order leaves the parties to agree on the nature of the ditch, which will affect its cost, and they seem to have agreed on very little to date.

**Petition for Stay**

[¶66] As noted above, Appellant applied for a stay in the district court and here, and was denied both times. The decision to reverse and remand will result in further delay during a time in which she has no means of conveying water to her land. We can only hope that sufficient rain fell in 2014, a very wet year, to permit ranching operations. The record reflects that in most years there is no available irrigation water in this area after July 4, and that date is long past. On remand, we anticipate that the district court will develop an interim means of assuring that Appellant receives sufficient water to carry on ranching operations, and that it will set a realistic and specific time frame for completion of a Dedicated Ditch, if it decides that it can in fact partition in kind.

## SUMMARY AND CONCLUSION

[¶67] Because this case is complex and our opinion is long, and because this is the second time we have dealt with this partition action, we will provide a more detailed summary than is our usual practice. The district court must first determine if a partition can be made without doing manifest injury to the value of the property, and that the division is equitable to all parties. We understand that for the litigants, ranching is not an occupation – it is a way of life. Their forebears occupied and served as stewards of this land for well over a century, and some of them are buried upon it. We grasp that neither party probably wants the land partitioned by allotment or sale.

[¶68] We also understand that the expense of presenting evidence to resolve the issues we have identified may be considerable, and that they have already undoubtedly incurred sufficient legal expense to build a very fine ditch. We appreciate the work done by the commissioners and the difficult decisions the district court has been faced with. Nonetheless, this is not an amicable partition in which the parties agreed on all significant issues, and it may simply not be possible to partition in kind in light of the nature of this property. *See* Wyo. Stat. Ann. § 1-32-108 (amicable partition). There are simply too many unresolved issues to allow us to determine whether the partition in kind ordered by

21

the district court is possible, much less whether it will result in manifest injury to the property, or for this to be a final order which an appellate court can adequately review.

[¶69]  The dissent suggests that a remand to make the factual determinations above will unjustly prolong this already prolonged dispute.  It correctly points out that we considered a narrow issue three years ago.  While this is true, that decision unfortunately involved an order which did not resolve necessary issues.  The district court's order currently before us is also incomplete and unworkable, and it is unavoidable that further proceedings will be required.

[¶70]  A condemnation proceeding, if required, would be another lawsuit, and would probably entail more time and considerable expense.  The district court, however, can efficiently hold a hearing to resolve the factual issues identified below, and enter an appropriate order on a complete record.  If the parties are not satisfied and feel it necessary to appeal again, at least this Court will have a sufficient record to allow it to make an informed decision on the merits, rather than speculating as to what the facts might be.

[¶71]  We remand for the district court to determine whether the land can be partitioned in kind without manifest injury to its value, and if so, in light of the costs and obstacles involved, whether the district court still believes that the Westerly Ditch provides an equitable means of dividing the property.  The district court should determine the following:

- Can a permanent easement running with the land be obtained from Kraft Ranches, and if so, will it be large enough and free of restrictions which would cause manifest injury to the value of Appellant's property?

- Is the location in the second order specific enough to locate the ditch on the ground?

- Will Appellant probably be able to obtain permission to change her means of conveyance?  This will also require a determination of the probable interests of junior appropriators.

- If a permanent easement can be obtained, and if a change in means of conveyance is likely to be approved, what specifications must the ditch meet, and how much will it cost?  Will the cost of the ditch cause manifest injury to the value of the property because the parties must pay to survey, build, and maintain it?

- Whichever route the district court chooses for the Dedicated Ditch, are special provisions required to assure that they will enter into appropriate contracts?

- If the court concludes that the Westerly Ditch cannot be built for any of the reasons discussed above, and selects the North-South or Commissioners' Ditch, will the location of the ditch take enough of Appellees' hay meadow to render the partition inequitable?

- What is an appropriate time frame to complete the ditch after the ruling, and what interim means will be used to supply Appellant with water?

[¶72] Reversed and remanded for further proceedings consistent with this opinion.

**KITE, Justice, dissenting, with whom HILL, J., joins.**

[¶73]  The record in this case, together with this Court's opinion in *Platt v. Platt*, 2011 WY 155, 264 P.3d 804 (Wyo. 2011) (*Platt I),* supports the district court's decision to select the Westerly Ditch and that decision should be affirmed.  The majority's decision will waste the parties' time and money, as well as, unnecessarily expend judicial resources.  Consequently, I respectfully dissent.

[¶74]  The 2010 district court order partitioned the property and set out in significant detail the basic structure for the post-partition irrigation system including providing the general location of the Dedicated Ditch on the west side of the Trust's property.  The order stated:

> 5.      For the 2010 irrigation season, the parties and the ranch property partitioned hereby, shall maintain its historic water right operation and distribution system for calendar year 2010.[13]  The following irrigation and water rights division shall be completed and implemented beginning in the Spring of 2011. In making this division/allocation of water rights, except for the construction of the Dedicated Ditch as provided herein, it is not the intention of the Court to change the historic use and manner of use previously made of the water rights. The Court recognizes that Wyoming water law is based on the doctrine of prior appropriation.  Under Wyoming water law, since water is appurtenant to the lands for which it is appropriated, the Court orders that adjudicated water rights remain with the lands awarded to each of the parties. However, to the extent that there is water available in excess of the adjudicated water rights each party will hold or be entitled to under the doctrine of prior appropriation, the Court orders that such water, including flood irrigation water, be split equally between the lands awarded to the Plaintiff and those lands awarded to the Defendants, for which appropriations exist.

---

[13] When the Trust petitioned the district court to reappoint the commissioners to specifically locate the Dedicated Ditch, Alice objected on the basis that she had the right, under the 2010 order, to continue using the North/South (Historical) ditch even after the 2010 irrigation season.  In other words, she argued that she could choose the North/South ditch as her Dedicated Ditch.  The district court properly rejected Alice's argument.  Her interpretation of the order completely ignores the obvious intent to locate a new Dedicated Ditch for her use beginning in 2011. There would have been no reason to include the approximate location of the Dedicated Ditch in the original order if the court intended the North/South ditch to be the Dedicated Ditch.

The parties shall install a measuring device in the King Turnbull Ditch at the approximate location where the King Turnbull Ditch crosses the east line of the NE¼NW¼ of Section 33, Township 14 North, Range 82 West, for the purposes of measuring all of the water in the King Turnbull Ditch. The parties shall install a second measuring device at the point of beginning of what will be a new Dedicated Ditch for the purposes of delivering water to the lands awarded to the Defendant. The Dedicated Ditch would establish a headgate and measuring device located at approximately the SE corner of the SW¼ of Section 28, Township 14 North, Range 82 West. It would then run in a northwesterly direction approximately three-quarters of a mile across lands awarded to the Plaintiff at such location as the parties may jointly agree to the approximately NW corner of the SE¼NW¼ of Section 28, Township 14 North, Range 82 West, for the benefit of those lands awarded to the Defendants. The location of the Dedicated Ditch shall be specifically described and be a permanent easement across those lands on which it is located. In the event the parties are unable to agree on the exact location of the Dedicated Ditch, to serve those lands awarded to the Defendants by September 1, 2010, then, at the request of the Defendant, the Commissioners acting herein will be reengaged and shall employ an engineer and . . . return to the lands with the engineer for the purposes of determining the exact location for such Dedicated Ditch.

The cost for purchasing and installing all headgates and measuring devices as well as the costs incurred in engineering and constructing the Dedicated Ditch shall be split equally between the parties to the extent assistance is not available through NRCS. After installation and construction of the headgates and measuring devices, the costs relative to the maintenance of the first measuring device located at the approximate point where the King Turnbull Ditch crosses the east line of the NE¼NW¼ of Section 33, Township 14 North, Range 82 West, would be shared equally by the parties. Future maintenance costs incurred in the maintenance of the headgate and second measuring device located at the approximate SE corner of the SW¼ of Section 28, Township 14 North, Range 82 West, shall be the responsibility of the Defendants and the cost of maintaining the Dedicated Ditch

once constructed shall also be the responsibility of the Defendants.

6. Each party shall have with respect to their water, water rights, ditch, and ditch rights an inviolable right to go upon all of the lands covered by this Order and to follow their ditches from their base of use to their source of beginning for the purpose of protection, maintenance, operation, repair and all other necessary or incidental activities to assure the full use and enjoyment of their water, water rights, ditch and ditch rights, without hindrance by any other party.

7. Each party shall conduct themselves and construct, operate and maintain, use and repair their water and irrigation systems in such a manner so as not to cause any damage to the other party or the other party's property or so as to interfere with the reasonable operation and use of the other party's water or irrigation systems, canals, ditches, pipes, flumes, ditch rights, headgates, diversions, dams, weirs, measuring devices and structures used in conveying and regulating the flow of water of whatever character or type.

8. The parties shall equally share in the costs of completing any surveys necessary to accomplish the division set forth above. Further, the parties shall equally share in the costs of constructing any boundary fences necessary to separate the two properties. Location of any fences will be agreed upon by the parties or by registered survey.

(footnote added).

[¶75] In *Platt I,* we affirmed the district court's partition order. The location of the Dedicated Ditch on the west side of the Trust's property was not questioned in the first appeal. Instead, the only issue raised in that case was whether the district court could reject the commissioners' recommendation to award the Trust an easement (Easement 3) over property awarded to Alice in the partition to give it better access to the King Field. The district court decided not to include Easement 3 in its partition decision, and the Trust argued on appeal that the district court did not have authority to modify the commissioners' recommendation. *Id.,* ¶¶ 14-15, 264 P.3d at 807. We reviewed the partition statutes and concluded that they were supplemented by equitable principles which allowed modification of the commissioners' recommendation. *Id.,* ¶¶ 15-20, 264 P.3d at 807-11. We noted the Trust's appellate argument was somewhat incongruous given it had requested at the district court hearing that the commissioners'

26

recommendation be modified to actually give it title to the 13.15 acre parcel covered by Easement 3. *Id.,* ¶¶ 7-10, 20-21, 264 P.3d at 805-07, 811. We affirmed the district court's decision to reject Easement 3, altogether, and leave the 13.15 acre parcel in Alice's portion of the partitioned property.[14] *Id.,* ¶ 1, 264 P.3d at 804.

[¶76] The complete record of the original partition proceeding is not included in the record of the appeal at bar. Our standards for appellate review require, under those circumstances, that we presume the evidence in that trial supported the court's original factual findings and conclusions of law. Moreover, our rules of finality require that we respect the original order because it was not questioned in the first appeal. *See, e.g., Nickle v. Bd. of County Comm'rs of Platte County,* 2007 WY 115, ¶ 17, 162 P.3d 1208, 1213 (Wyo. 2007); *Sundance Mt. Resort, Inc. v. Union Tel. Co.,* 2007 WY 11, ¶ 18, 150 P.3d 191, 196-97 (Wyo. 2007). In addition, neither party contended the order in *Platt I* was not final.

[¶77] It is true, as pointed out in the majority opinion, that the district court did not specifically identify the location of the Dedicated Ditch in 2010. It did, however, set out its fundamental parameters, approximate starting and ending points and a general location. The district court's instructions to the commissioners upon reappointment were to locate the Dedicated Ditch in accordance with the original order. The Westerly Ditch is the only one of the three alternatives considered in the 2013 proceeding that met the requirements set out in the 2010 order.

[¶78] Importantly, the general location of the ditch and its incumbent construction costs and other concerns were part of the original partition decision. The commissioners and Alice ignored the original order in proposing, respectively, the Commissioners Ditch and the North/South ditch as the Dedicated Ditch. If the district court would have accepted either of those alternatives, it would have undermined the equitable balance it achieved in the original partition. The district court's decision in 2013 to approve the Westerly Ditch actually preserved the underlying basis of the original partition.

[¶79] Alice claims in her appellate brief that "all of the parties involved" agreed, during the second proceeding, that a ditch following the parameters set out in the original order was not feasible. The record does not support that assertion given the Westerly Ditch was proposed by the Trust and ultimately approved by the district court. In addition, two of the three commissioners stated at the hearing that the Westerly Ditch was likely a better alternative than the Commissioners Ditch because its location on the western portion of the Trust's property would require less interaction between the parties, fewer

---

[14] Paragraph 8 of the majority opinion suggests the 13.15 acre parcel at issue in *Platt I* pertained to the proposed new ditch. However, the district court's order and our opinion indicate the acreage was not related to the new ditch construction; rather, it was intended to allow the Trust shorter access to the King Field.

parallel ditches, crossovers, and vehicle crossings, and have less impact on the Trust's irrigated property.

[¶80]   The district court's 2012 order reappointing the commissioners and directing them to locate the Dedicated Ditch instructed the commissioners to "act in accordance with their prior oath and the *Final Judgment and Order Partitioning Real Property"* entered in 2010.   The district court ordered the commissioners to locate the Dedicated Ditch including the two measuring devices in accordance with the general parameters contained in the 2010 order.   The ditch proposed by the Trust in the second proceeding met the general parameters set out in the 2010 decision.   The district court's order approving the Westerly Ditch as the Dedicated Ditch specifically stated that it "comports with the location set forth in the [2010 order] which remains in effect and is not modified in any way by this order."   Thus, Alice's statement that everyone agreed that the ditch could not feasibly be located in accordance with the 2010 order is not supported by the record before us and is, in fact, contradicted by the fact that the Westerly Ditch did comply with that order.

[¶81]   Alice's concerns about the costs of the Westerly Ditch, the need to obtain an easement from the Kraft Ranch, and the possibility of a petition for a new means of conveyance could have, and should have, been raised during the first partition action. Although other aspects of the partition were appealed in *Platt I*, no one contested the district court's decision about the irrigation system, even though Alice was surely aware that the North-South (Historical) Ditch, which she now champions, was not an option under that ruling.   Furthermore, the general location of the ditch on the west side of the Trust's property as set out in the first partition order required an easement from the Krafts in order to get the water out of the King Turnbull Ditch.   Alice knew that at the time of the first order, and did not appeal or otherwise object on that basis.   Consequently, she should have to live with that, whether under the principles of res judicata, collateral estoppel, and/or the law of the case.

[¶82]   In my view, the district court's order was not improper simply because it required further action to be taken to effectuate it.   With regard to obtaining permission to utilize the Kraft Ranch land for irrigation purposes, the record adequately supports the district court's ruling that permission had been secured, even though a formal easement or agreement was not part of the record.   The commissioners' recommendation stated:

> Kraft Ranches, Inc., owner of the property where the measuring devices and head gate are to be located, will allow easement for Dedicated Ditch, access to and from the location, dirt materials necessary for installation and maintenance of same at no cost.   Costs associated with any paper work or surveying work deemed necessary to accomplish this shall be shared by the parties of the partition.

28

Owners of Kraft Ranches, Inc., need to be notified of any upcoming work and reserve the right to advise and oversee any construction or maintenance on their property.

Jerry Kraft was a commissioner in the partition action and, when called to testify at the evidentiary hearing, indicated that he represented Kraft Ranches, Inc.. He gave no indication at the hearing that the Platts' ability to obtain an easement over Kraft Ranch property for either the Commissioners' Ditch or the Westerly Ditch was in question. In addition, Mr. Kraft's signature on the commissioners' report with the above-quoted language certainly indicated that he had authority to act on behalf of Kraft Ranches, Inc., even if a formal corporate authorization for the easement had not yet been executed.

[¶83] As the appellant in this action, Alice bears the burden of establishing the district court's finding that an easement could be obtained was clearly erroneous. *See Thomson v. Wyo. In-Stream Flow Comm.,* 651 P.2d 778, 788 (Wyo. 1982). Our standard of review requires that:

> [w]e do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law. We affirm the trial court's findings if there is any evidence to support them. We accept the evidence of the prevailing party as true and give that party the benefit of all favorable inferences that can fairly be drawn from the evidence, while disregarding conflicting evidence.

*Terris v. Kimmel,* 2010 WY 110, ¶ 7, 236 P.3d 1022, 1025 (Wyo. 2010) (citations omitted).

[¶84] The majority's decision has the effect of reversing this standard of appellate review. When the correct standard with the appropriate inferences is applied, it is clear that Alice has not satisfied her burden of showing the district court's conclusion was erroneous. In fact, the record establishes just the opposite – Kraft Ranches, Inc. was willing to give an easement for the area where the new Dedicated Ditch headgate and measuring devices would be located. Of course, if a specifically described easement document cannot be obtained from the Kraft Ranch, condemnation is an available means of securing a right for Alice's irrigation works to cross the Kraft Ranch property. Wyo. Stat. Ann. § 1-26-815.

[¶85] Likewise, to require the parties to go through a process to obtain Board of Control approval of a change in the means of conveyance before the order is considered final is unnecessary. This situation presents a classic chicken/egg type conundrum. Alice may not be able to petition to change her means of conveyance until the court has approved

29

the partition with its incumbent ditch rights. In *Altaffer v. Cross (In re Cross),* 2013 WY 79, ¶¶ 6, 12-14, 25, 304 P.3d 932, 934, 936, 938 (Wyo. 2013), we approved a private road even though the petitioners still needed to secure a permit from the Bureau of Reclamation to gain full access to a public road. We held that, given the Bureau of Reclamation would not issue the permit unless the petitioners could show they had legal access to its property, the rule of reason justified granting the private road first on the condition that a permit would ultimately be obtained. *Id.*

[¶86] It is not unusual for a court to order action to be taken to effectuate its judgment that will require the future cooperation of non-parties. For example, district courts routinely order property to be sold or refinanced to accomplish property division in divorce cases. Such orders presuppose the parties will have to obtain the cooperation of non-parties such as a bank for refinancing or a realtor and purchaser for a sale. Indeed, in this case, the 2010 order directed: transfer of a brand which required future action by the Wyoming Livestock Board; auction of the ranch's equipment with the proceeds to be divided between the parties which involved an auctioneer and buyers; transfer of grazing permits which required approval from the National Forest Service and the Bureau of Land Management; and collection of the proceeds of a hay sale which required cooperation and action from a third party. If the parties are unable to accomplish such tasks, they can apply to the court for a modification of the order.

[¶87] Questioning, as the majority opinion does, whether the orders were final because a few matters still need to be accomplished creates a precedent that could unnecessarily hamstring district courts as they craft solutions to many kinds of disputes. We have, in the contexts of probate and partnership dissolution, ruled that orders were final even though there was still work left to be done. In *Jubie v. Dahlke (In re Estate of Dahlke),* 2014 WY 29, ¶ 38, 319 P.3d 116, 126 (Wyo. 2014), we held a decree of estate distribution was final and subject to appeal even though the property still needed to be distributed, explaining:

> As of the date a decree of distribution is entered, the share of the estate each heir or devisee will be awarded has been determined, and that person can meaningfully challenge the ruling if she believes it to be incorrect. On the other hand, distribution of estate assets may take considerable time, as when real property must be sold and the proceeds of the sale distributed. If a decree of distribution were not final and appealable, an aggrieved party would be denied a prompt appeal of the probate court's distribution decision. *Cf., In re Hartt's Estate,* 75 Wyo. 305, 380–82, 295 P.2d 985, 1014–15 (1956). It would serve no useful purpose to delay an appeal until distribution had been made, and even further until an order closing the estate had been entered.

[¶88]   This Court used the same type of rationale to review the district court's plan to distribute partnership assets in *Weiss v. Weiss,* 2008 WY 30, ¶¶ 12-13, 178 P.3d 1091, 1096-97 (Wyo. 2008).  We stated the district court's order dissolving a partnership and setting over parcels of land to each partner was considered final even though a formal survey and conveyance of parcels of property was not yet completed.  We explained: "We are satisfied that the district court's order is appealable and, moreover, it is as 'final' an order as could be fashioned in this case without causing gross diseconomies of effort to the parties, to the district court, and to this Court." *Id.*

[¶89]   Although a different statutory scheme is involved in the case extant, the underlying policy is no different.  If we require the parties to obtain approval from the Board of Control and finalize the easement with the Kraft Ranch before they can appeal the district court's general order of partition or location of the Dedicated Ditch, they could potentially waste all of that time and expense if the district court's decision were reversed.

[¶90]   The majority opinion also focuses on what it suggests are excessive costs associated with the Westerly Ditch.  Those concerns do not justify a finding that the district court abused its discretion by approving the Westerly Ditch.  The possibility of obtaining funding from the United States Department of Agriculture, Natural Resources Conservation Service (NRCS) is mentioned repeatedly in the record, indicating that significant federal subsidization of the costs may be available if the project can be designed to meet NRCS requirements.[15]  In addition, the district court ordered the parties to equally share the costs in excess of the grant funding.  So, in terms of equity, the costs issue was essentially a wash.  The fact that the costs will be shared equally will also provide the parties with an incentive to find the most cost-effective approach.  If those equally shared costs are a problem for the parties, there is presumably no reason that they could not still enter into an agreement outside of the court's order, such as cooperating in the use of the North/South Ditch, and have it approved by the district court.

[¶91]   Alice also expresses concerns that she, alone, will bear the risk of the Westerly Ditch not being effective to convey water to her property.  Again, those concerns should have been raised in the original proceedings.  In any event, the district court took that risk into account and alleviated it by ordering the parties to share the initial costs of construction and installation of a workable irrigation system.  Therefore, the Trust will have to share equally in the cost of creating a ditch that will effectively supply irrigation water to Alice's property.

---

[15]   Gene Carrico, another commissioner in this matter, testified at the hearing that funding may also be available through a state task force.

[¶92] I also depart from the majority opinion's statement that the commissioners and district court did not finish their jobs because they did not specifically determine the costs of the Westerly Ditch and determine whether that expense would manifestly injure the value of the entire partition estate. In the original partition action, the commissioners and the district court specifically determined that the partition, with the location of the Dedicated Ditch on the west side of the Trust's property, would not manifestly injure the value of the property. That decision was not challenged in *Platt I.* Further, the commissioners were not instructed in either appointment to specifically determine the costs of improvements that would have to be made to accomplish the partition, in general, or the cost of the Dedicated Ditch, in particular. Additionally, the record currently before us does not demonstrate that Alice requested such an instruction.

[¶93] There is no statutory requirement for a specific determination of the cost of the ditch. The relevant statute is Wyo. Stat. Ann. § 1-32-106, which simply states:

> In making the partition, the commissioners must examine the estate and set apart the same in such lots as will be most advantageous and equitable, having due regard to the improvements, situation and quality of the different parts.

In *Platt I,* ¶ 17, 264 P.3d at 808, we noted that *Field v. Leiter,* 90 P. 378 (Wyo. l907), was the most comprehensive Wyoming decision on partition prior to *Platt I.* One of the issues in *Field* was whether the commissioners' report was inadequate under the partition statutes because it failed to specifically describe the character and situation of the premises, or to state that the properties had been equitably and advantageously partitioned. *Id.* at 388-90. This Court held there were no specific statutory requirements for the commissioners to make those findings and, consequently, their omission from the commissioners' report was not a basis for rejecting it. *Id.* Likewise, the commissioners' and district court's failure to make specific findings about the cost of the ditch in this case did not violate the partition statutes or the instructions.

[¶94] The commissioners determined that no manifest injury to the property would occur from the partition when they recommended a property division, with the Dedicated Ditch being located on the west side of the Trust's property, in *Platt I.* The only statutory reference to "manifest injury" is in relation to a determination by the commissioners that dividing the property cannot occur without "manifest injury to its value." Wyo. Stat. Ann. § 1-32-109 states:

> **§ 1-32-109. Appraisement required where estate cannot be divided according to writ; return by commissioners; election to take at appraised value**.
>
> When the commissioners are of the opinion that the estate

cannot be divided according to the demand of the writ without manifest injury to its value, they shall return that fact to the court with a just valuation of the estate. If the court approves the return and one (1) or more of the parties elects to take the estate at such appraised value, it shall be adjudged to him upon his paying to the other parties their proportion of the appraised value according to their respective rights, or securing the same as hereinafter provided.

Although the total cost of the Westerly Ditch is not certain, even the highest estimate set out in Paragraph 24 of the majority opinion represents less than eight percent of the total $2,277,875 value of the property. *Platt I,* ¶ 5, 264 P.3d at 805. The commissioners, the parties and the district court certainly knew there would be significant expenses involved in constructing the Dedicated Ditch on the western side of the Trust's property. Still, the decision makers determined that the property could be partitioned without manifestly injuring the value of the entire estate when it originally partitioned the property, and Alice did not contest that finding in the first appeal.

[¶95] The majority's decision will reopen the entire partition action because, as that opinion rightly recognizes, any ditch which does not meet the parameters set forth in the 2010 order may undermine the original basis for the equitable partition. These parties have been in litigation over this partition since 2007, and we affirmed the district court's partition decision nearly three years ago. To unnecessarily drag out this expensive and divisive family dispute even longer does a disservice to the parties and the judicial system.